1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 JOEL REYNOSO,                                      ) Case No.: 1:19-cv-0314 - JLT
                                                       )
12              Plaintiff,                             ) ORDER REMANDING THE ACTION PURSUANT
                                                       ) TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13      v.                                             )
                                                       ) ORDER DIRECTING ENTRY OF JUDGMENT IN
14 ANDREW M. SAUL[1],                                  ) FAVOR OF PLAINTIFF JOEL REYNOSO AND
   COMMISSIONER OF SOCIAL SECURITY,                    ) AGAINST DEFENDANT, ANDREW M. SAUL,
15                                                     ) COMMISSIONER OF SOCIAL SECURITY
                Defendant.                             )
16 _____            )

17          Joel Reynoso asserts he is entitled to a period of disability, disability insurance benefits, and

18 supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

19 administrative law judge erred in evaluating the medical record, including opinions of his treating

20 physician and an examining physician.  For the reasons set forth below, the matter is **REMANDED** for

21 further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

22                                        **BACKGROUND**

23          In January 2015, Plaintiff filed his application for benefits, alleging disability due to bipolar

24 disorder, anxiety, aggressive behavior, forgetfulness, mood swings, body aches, knee pain, left shoulder

25 pain, and allergies.  (Doc. 9-6 at 7; Doc. 9-7 at 7)  The Social Security Administration denied the

26 applications at the initial level and upon reconsideration.  (*See generally* Doc. 9-4)  Plaintiff requested

27

28          [1] The action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner.
   (*See* Doc. 1 at 1)  Andrew M. Saul, who has since been appointed the Commissioner, has been automatically substituted as
   the defendant.  *See* Fed. R. Civ. P. 25(d)

                                                    1

an administrative hearing on the application and testified before an ALJ on January 5, 2017.  (*See* Doc. 9-3 at 13, 37)  The ALJ determined Plaintiff was not disabled and issued an order denying benefits on July 18, 2017.  (*Id.* at 13-23)  Plaintiff requested review of the decision with the Appeals Council, which denied the request on January 24, 2019.  (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Pursuant to this five-step process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 26, 2014.  (Doc. 9-3 at 15)  Second, the ALJ found Plaintiff's severe impairments included: depressive disorder, anxiety disorder, and osteoarthritis. (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing.  (*Id.* at 15-16)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following additional limitations: occasionally lift and carry up to 50 pounds and frequently 25.  Stand and or walk for 6 hours and sit for 6 hours in an 8-hour workday with normal breaks. The claimant is capable of frequent balancing, stooping, kneeling, crouching, crawling, and climbing.  He can perform frequent overhead and lateral reaching with left upper extremity. The claimant is able to perform simple, routine tasks.

(*Id.* at 16)  With this residual functional capacity, the ALJ determined at step four that Plaintiff was "capable of performing past relevant work as a Cleaner Commercial and Cleaner Industrial."  (*Id.* at 21) In the alternative, the ALJ concluded at step five that "there are other jobs existing in the national economy that [Plaintiff] is also able to perform," including kitchen helper, cooks helper, and dining room attendant.  (*Id.* at 21-22)  Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act from February 26, 2014, through the date of the decision.  (*Id.* at 23)

*///*

3

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical opinions related to his mental limitations and abilities from his treating psychiatrist, Dr. Elisa Rambo, and the consultative examiner, Dr. Elke Kurpiers.  (Doc. 12 at 6-18)  Thus, Plaintiff requests that the Court "reverse the ALJ's decision and order payment of benefits."  (*Id.* at 18)  On the other hand, the Commissioner argues the Court should affirm the decision because "the ALJ provided legally valid reasons supported by substantial evidence for affording significant probative weight to the State agency reviewing physicians' opinions and rejecting the opinions of Dr. Kurpiers and Dr. Rambo."  (Doc. 15 at 13)

**A.    Evaluation of the Medical Evidence**

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason. *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by Drs. Kurpiers and Rambo.

4

(Doc. 12 at 6-18)  Because these opinions were contradicted by Drs. Ikawa and Funkenstein (*see* Doc. 9-3 at 19), the ALJ was required to identify clear and convincing reasons for rejecting the physician's opinions.  *See Lester*, 81 F.3d at 831.

       1.      Opinion of Dr. Elisa Rambo

      Dr. Rambo, who treated Plaintiff on a monthly basis, completed a "Mental Disorder Questionnaire for Evaluation of Ability to Work" on July 29, 2016.  (Doc. 9-9 at 17-19)  Dr. Rambo noted Plaintiff had been diagnosed with major depressive disorder (ICD-10 code F33.9) and anxiety disorder, unspecified (ICD-10 code F41.9).  (*Id.* at 18)  She observed that Plaintiff "experience[d] hallucinations and delusions that may cause odd mannerisms that may interfere with necessary work relationships."  (*Id.*)  She also indicated that when Plaintiff had a major depressive episode, he had "reduced self-care (not taking showers), daily thoughts of committing suicide, [and] increased irritability." (*Id.*)  According to Dr. Rambo, Plaintiff had significant impairments in the areas of concentration and judgment.  (*Id.*)  She indicated Plaintiff's hallucinations, delusional or paranoid thoughts, and social isolation would impact his "ability to perform full time work, week after week." (*Id.*)  Dr. Rambo also believed Plaintiff had difficulty with adapting "to stresses common to the normal work environment" and his social functioning "would impair [his] ability to work with supervisors, co-workers, or the public."  (*Id.* at 19)

      Addressing the medical evidence, the ALJ indicated "[l]imited weight" was given to the statement from Dr. Rambo.  (Doc. 9-3 at 19)  The ALJ explained his reasoning as follows:

> Dr. Rambo's opinion provides little in the way of analysis or explanation for this opinion and cites nothing in the objective medical evidence of record in support of it. Moreover, the opinion is vague in nature and although it notes "significant impairment" in several areas of mental functioning, it fails to detail precisely the extent of these limitation[s] in terms of a residual functional capacity assessment.  Finally, Dr. Rambo's opinion is inconsistent with and unsupported by the limited treatment history, detailed above, and Dr. Rambo had only seen the claimant on a limited, monthly basis.

(*Id.*)  Plaintiff argues the reasons identified by the ALJ to reject the opinion from Dr. Rambo are not "clear and convincing."  (Doc. 12 at 15-18)

       *a.*    *Lack of objective evidence*

      The Ninth Circuit determined a treating physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."  *Young v.*

*Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).  It follows that an ALJ may reject opinions that are lacking explanations for the conclusions.  *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (the treating physician's opinion was properly rejected where the notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept a treating physician's opinions that are conclusory and brief, or unsupported by clinical findings).

Plaintiff asserts the ALJ erred in rejecting the opinion on these grounds, because "Dr. Rambo's report does refer to [Plaintiff's]'odd mannerisms' related to [his] anxiety when he looks at people in the face, which is well documented on this record."  (Doc. 12 at 16, citing AR 377, 380, 389 [Doc. 9-8 at 38, 41, 50])  Notably, however, there is no indication in the questionnaire or notes that Dr. Rambo observed these mannerisms.  Rather, in the "subjective findings" section of treatment notes, she noted Plaintiff reported that he had "a sense of 'anxiety' or 'pressure' in his forehead when he looks at some people directly in the face," and he felt "better straight away" if he touched his forehead."  (Doc. 9-8 at 49)  Further, Dr. Rambo indicated Plaintiff reported "some obsessive/ruminative thoughts about sensory phenomenon of pressure/tension/anxiety in his forehead when he looks at some people in the face, which requires [him] to touch his forehead."  (*Id.* at 50)  Finally, as noted by the ALJ, Dr. Rambo does not indicate that she *observed* these mannerisms—or specifically identify mannerisms— in the questionnaire.  Thus, the ALJ did not err in finding Dr. Rambo's "opinion provides little in the way of analysis or explanation … and cites nothing in the objective medical evidence of record" (Doc. 9-3 at 19), and this was a specific and legitimate reason for rejecting the opinion.

### b.      Vagueness

An ALJ may reject an opinion that is vague and fails to identify specific functional limitations for the claimant.  *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999); *see also Durham v. Colvin*, 2015 WL 9305627, at *4 (C.D. Cal. Dec. 21, 2015) ("ALJ provided specific and legitimate reason to reject physician's opinion where ALJ found the opinion was "vague and ... does not provide specific work-related limitations for the claimant"); *Baker v. Astrue*, 617 F.Supp.2d 498, 509 (E.D. Ky. 2009) (ALJ properly rejected an opinion where the physician did not identify specific limitations); *Roche v. Berryhill*, 2017 WL 6512236 at *25 (N.D. Oh. Dec. 12, 2017) ("ALJ properly rejects a physician

opinion where it fails to provide useful guidance as to a claimant's specific functional limitations");

*Rogers v. Astrue*, 2009 WL 2423965 at *7 (M.D. Tenn. Aug. 4, 2009) (ALJ properly rejected an

opinion as "vague" where it contained no "useful guidance" as to the claimant's specific limitations).

The ALJ found Dr. Rambo's opinion was "vague in nature" and failed "to detail precisely the

extent of [Plaintiff's] limitation[s] in terms of a residual functional capacity assessment."  (Doc. 9-3 at

19)  As the ALJ observed, Dr. Rambo opined Plaintiff had "significant impairments" in several areas of

functioning— including concentration, judgment, hallucinations, delusional or paranoid thoughts, and

self-isolation—but failed to explain how these impairments translated to specific functional limitations

or the extent to which they impaired Plaintiff's ability to work. (*See id.*; *see also* Doc. 9-9 at 18)

Rather, Dr. Rambo merely marked the boxes indicating an impairment on the form and did not offer

any narrative comments to explain the extent of the impairment.  (*See* Doc. 9-9 at 18)  Thus, the ALJ

did not err in finding the opinion was vague, and the vagueness was a specific and legitimate reason for

rejecting the opinion.  *See Meanel*, 172 F.3d at 1114; *Durham*, 2015 WL 9305627 at *4.

### c.   Treatment history

The ALJ also gave less weight to Dr. Rambo's assessment because of Plaintiff's "limited

treatment" and the frequency she saw Plaintiff, which was "on a limited, monthly basis."  (Doc. 9-3 at

19)  Notably, an ALJ may consider the length and frequency of treatment in evaluating what weight to

give the opinion of a treating physician. 20 C.F.R. § 404.1527(c)(2)(i); *see also Benton v. Barnhart*,

331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of

contact relevant in weighing opinion).  However, a limited treatment relationship cannot alone support

the rejection of a treating source's opinion." *Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D.

Cal. Mar. 6, 2017); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that a

limited treating relationship may be a valid reason for not according a giving controlling weight to the

opinion of a treating physician, "it is not by itself a basis for rejecting them").

Although the treatment Plaintiff received could not alone support the ALJ's decision to reject

the limitations identified by the physician, it was only one of the factors considered.  Thus, the limited

treatment supports the ALJ's evaluation of Dr. Rambo's opinion.  *See Allen v. Comm'r of Soc. Sec.*,

498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant]

was a specific and legitimate reason to assign little weight" to the treating physician's opinion).

>    d.    Conclusion

The ALJ identified clear and convincing reasons to reject the limitations identified by Plaintiff's treating physician, including the failure to identify specific limitations and the lack of objective evidence. *See Connett,* 340 F.3d at 875; *Tonapetyan,* 242 F.3d at 1149; *Meanel,* 172 F.3d at 1114. Thus, the ALJ did not err in evaluating the opinion of Dr. Rambo.

>    2.    Opinion of Dr. Elke Kurpiers

Dr. Kurpiers performed a comprehensive mental evaluation on February 10, 2017. (Doc. 9-9 at 37) Plaintiff told Dr. Kurpiers that he had bipolar disorder, anxiety, aggressive behavior, and forgetfulness. (*Id.*) Dr. Kurpiers noted Plaintiff indicated he had mood swings that "change every hour, sometimes more frequently." (*Id.* at 37) Plaintiff denied having auditory hallucinations, "but said that he talks to himself and answers himself" and had "abnormal visual experiences." (*Id.* at 39, 41) Plaintiff also "endorsed symptoms of irritability, low frustration tolerance, feeling hopeless most of the time and worthless all the time." (*Id.* at 39) In addition, Plaintiff said "used to be physically aggressive toward people but is no longer, thanks to getting help from his counselor, psychiatrist and medication treatment." (*Id.* at 38)

Dr. Kurpiers observed that Plaintiff "presented with high anxiety level," and "immediately burst out talking with fast and pressured speech." (Doc. 9-9 at 37) She noted Plaintiff's "mood was anxious and apprehensive" and "[h]e was tense and intense." (*Id.* at 39) Dr. Kurpiers found Plaintiff was able to recall "four digits forward but only two digits backward," he had difficulty spelling words forward and backward in English and Spanish, and "was able to perform serial 3s but not serial 7s." (*Id.* at 40) Plaintiff also had difficulty with performing two-digit math problems, such as 12+13, and "was unable to do any division problems." (*Id.*) Dr. Kurpiers tested Plaintiff's memory and observed:

> [Plaintiff] needed three repetitions to learn and repeat three words. After three minutes he was unable to recall any of the words. Likewise, he had no recall of any of the words five and ten minutes later. He asked, "Which words?" This is a poor performance and not consistent with estimated ability to recall. As noted before, the claimant was anxious and tense, and internally preoccupied which might have negatively affected his recall. It is noted that his recall was 3/3 words in background information.

(*Id.*) She believed Plaintiff appeared "rigid and intense," and found it "difficult to establish rapport but

over time he responded to support and encouragement." (*Id.* at 41)  Dr. Kurpiers noted that, based on information from Plaintiff, it appeared he had "no real relationships" because he did "not visit anyone and nobody visit[ed] him," he had not seen one sister "in a long time," had no contact with another sister since 2013, and "did not talk to" coworkers.  (*Id.*)  Dr. Kurpiers found Plaintiff's "cognitive screening suggest[ed] decreased concentration, concrete thinking and short-term memory impairment (based on three world recall)." (*Id.*)  She diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychotic features; and anxiety disorder, not otherwise specified. (*Id.*)  Dr. Kurpiers indicated Plaintiff's "[c]urrent GAF [was] estimated to be around 55."[2] (*Id.*)

Dr. Kurpiers concluded Plaintiff was able "to understand simple instructions," but "would not be able to understand complex instructions, especially in the English language." (Doc. 9-9 at 42)  She explained Plaintiff's "ability to remember and carry out instructions appears mildly to moderately impaired, dependent on his level of anxiety, internal preoccupation, [and] level of energy." (*Id.*)  In addition, Dr. Kurpiers opined Plaintiff's "ability to respond appropriately to coworkers, supervisors and the public appear[ed] severely impaired"; and "[his] ability to respond to usual work situations appear[ed] moderately to severely impaired, depending on his emotional status and ability to get out of bed." (*Id.*) Dr. Kurpiers believed Plaintiff's ability to handle changes in a routine work setting was "moderately to severely impaired." (*Id.*)  According to Dr. Kurpiers, Plaintiff had "limitations due to high anxiety level, mood swings, and depressions which would negatively affect his ability to work." (*Id.*)  She indicated her findings regarding Plaintiff's ability to interact with others and adapt to changes were supported by Plaintiff's "[r]estricted affect, high anxiety level, social withdrawal/ isolation, tense, rigid, poor self esteem, [and] poor social functioning." (*Id.* at 44)  Dr. Kurpiers also believed Plaintiff's activities of daily living were "marginal" and he lacked "interpersonal/ social support." (*Id.*)

After summarizing the limitations identified by Dr. Kurpiers, the ALJ indicated "[l]imited weight" was given to the opinion, "in so far as it suggests more restrict limitations than [the ALJ] determined." (Doc. 9-3 at 19)  The ALJ stated:

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed.) ("DSM-IV).  A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)."  *Id.* at 34.

[The opinion] appears to be based more on the claimant's subjective statements than on objective treatment records which, as noted above are limited and show essentially conservative, outpatient care for the claimant's mental impairments. Ex. B7F. In addition, the opinion appears to be internally inconsistent, as it notes a GAF score of 55 (which is consistent with moderate mental impairment) but then notes severe limitations. Furthermore, the opinion is inconsistent with both the claimant's established activities of daily living and social function. For example, as noted previously, he has skills with mechanical work and helps friends fix cars or does other mechanical work. Ex. B1F. On September 4, 2015, the claimant said he was busy helping a friend move furniture. Ex. B3F. He said he feels better after he is active. He was helping another friend at a swap meet. He was walking daily up to an hour. Finally, as noted above, greater weight has been given the opinions of other reviewing medical experts whose opinions are better supported by the totality of the medical evidence of record.

(Doc. 9-3 at 19)  Plaintiff contends the reasons identified by the ALJ were not legally sufficient and fail to support the ALJ's decision to reject the opinion.  (Doc. 12 at 8-14)

>            *a.        Subjective reports of Plaintiff*

An ALJ may reject an opinion predicated upon "a claimant's self-reports that have been properly discounted as not credible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (finding the ALJ identified a specific, legitimate reason for disregarding a physician's opinion "because it was premised on Fair's own subjective complaints, which the ALJ had already properly discounted").  For example, in *Tommassetti*, the Court reviewed the physician's records, and found "they largely reflect[ed] Tommasetti's reports of pain, with little independent analysis or diagnosis." *Id.*, 533 F.3d at 1041. Because the ALJ found the claimant's subjective complaints lacked credibility, the Court concluded that "the ALJ's adverse credibility determination supports the limited rejection of [the physician's] opinion because it was primarily based on Tommasetti's subjective comments concerning his condition." *Id.*

The ALJ also made an adverse credibility determination finding "the persuasiveness of the claimant's allegations regarding the severity of symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record."  (Doc. 9-3 at 20) The ALJ also rejected Dr. Kurpiers' opinion because it appeared to be based more upon Plaintiff's "subjective statements than on objective treatment records..."  (*Id.* at 19)  However, the ALJ failed to acknowledge that Dr. Kurpiers made her own observations and administered her testing regarding Plaintiff's cognitive abilities and did not rely completely on Plaintiff's statements *or* the treatment records.  For example, Dr. Kurpiers observed that Plaintiff's "mood was anxious and apprehensive,"

and he "presented with high anxiety level," "immediately burst out talking with fast and pressured speech." (Doc. 9-9 at 37, 39)  Dr. Kurpiers also tested his memory and math abilities and found Plaintiff "needed three repetitions to learn and repeat three words," and "unable to recall any of the words" after three minutes.  (*Id.* at 40)  Further, Dr. Kurpiers stated her findings were supported by her observations of Plaintiff's "[r]estricted affect, high anxiety level, social withdrawal/ isolation" and "tense, rigid" presentation.  (*Id.* at 44)  Because the record does not support the ALJ's conclusion that Dr. Kurpiers relied upon Plaintiff's subjective statements, this factor does not support the ALJ's decision to reject her opinion.

> *b.*   *Internal inconsistencies*

Internal inconsistencies in a physician's report may provide a basis for exclusion of an opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ did not err in rejecting various statements by treating physician because they were internally inconsistent); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining inconsistencies within a report supports the decision to discount the opinion of a physician); *Gabor v. Barnhart*, 221 Fed. App'x 548, 550 (9th Cir. 2007) (finding "internal inconsistencies" in physician's report provided an additional basis to exclude that medical opinion).

The ALJ found Dr. Kurpiers' opinion was "internally inconsistent" because a GAF score of 55 "is consistent with moderate mental impairment," but Dr. Kupier "notes severe limitations."  (Doc. 9-3 at 19)  Plaintiff contends, "The ALJ's statement is not entirely correct," because "Dr. Kurpiers assessed moderate limitations in some areas of mental functioning, and marked in others, not marked in all areas of functioning."  (Doc. 12 at 10)  On the other hand, the Commissioner argues the ALJ's finding that the report contained internal inconsistencies was proper.  (Doc. 15 at 16)

The Ninth Circuit explained that "GAF scores are "rough estimates of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). "As a global reference intended to aid in treatment, 'a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work.'" *Garcia v. Astrue*, 170 Soc. Sec. Rep. Serv. 686, 2011 WL 4479843 at *4 (E.D. Cal. 2011) (quoting *Stokes v. Astrue*, 2009 WL 2216785 at *7 (M.D. Fla. 2009)).

This Court previously observed, "while a GAF score … does not address which particular aspect(s) of functioning is being addressed" and "it can be difficult to ascertain whether GAF scores are meant to score a plaintiff's occupational functioning — ability to work — rather than perhaps addressing a plaintiff's overall symptoms or social functioning." *Margulis v. Colvin*, 2015 WL 1021117 at *16 (E.D. Cal. (Mar. 6, 2016); *see also Garcia*, 2011 WL 4479843 at *4 ("GAF scores are of very limited usefulness due to their failure to translate into concrete functional limitations"); *Mann v. Astrue,* 2009 WL 2246350 at *2 (C.D. Cal. 2009) (GAF scores are "merely a snapshot in time" that may not be supported by the overall record).

Although ALJ found the GAF score of 55 was inconsistent with the limitations identified by Dr. Kurpiers, the ALJ failed to explain why this was an inconsistency, how the inconsistency was material, or resolve the ambiguity.  *See Morgan, 169 F.3d at 603* (noting the ALJ has a responsibility to determine "whether inconsistencies are material (or are in fact inconsistencies at all)" in physician's report, as well as to resolve a conflict and ambiguity); *see also Dujardin v. Berryhill*, (W.D. Wash. Aug. 31, 2018) (finding error where "[t]he ALJ failed to explain how the GAF scores are inconsistent with [the physician's] opinions").  Indeed, Dr. Kupiers indicated Plaintiff appeared "mildly to moderately impaired" with the ability to carry out instructions, "moderate[] to severe[]" impairments in some areas of functioning, and severe impairments with some social functioning.  (*See* Doc. 9-9 at 42) The ALJ did not explain his conclusion that GAF score was inconsistent with these findings, or why the GAF score was entitled to more weight. Consequently, the ALJ erred in rejecting the functional limitations identified by Dr. Kurpiers as inconsistent with the diagnosed GAF score.  *See Margulis*, 2015 WL 1021117 at *17 (finding the ALJ erred in rejecting an opinion as inconsistent with a GAF score of 55 where "the ALJ failed to explain why the GAF score — which does not dispositively assess Plaintiff's ability to work — superseded [the physician's] more precise opinions as to Plaintiff's ability to function in a work-related setting").

### c.    *Plaintiff's level of activity*

The Ninth Circuit determined an ALJ may reject an opinion when the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue*, 429 Fed. App'x 649,

652 (9th Cir. 2011) (concluding the ALJ set forth specific and legitimate reasons for rejecting a physician's opinion where the assessment was based upon the claimant's subjective complaints, and limitations identified by the doctor conflicted with the claimant's daily activities).

The ALJ found the conclusions of Dr. Kurpiers were "inconsistent with both the claimant's established activities of daily living and social function." (Doc. 9-3 at 19)  Specifically, the ALJ noted Plaintiff helped "friends fix cars or [did] other mechanical work;" he walked daily; Plaintiff told his physician in September 2015 that "he was busy helping a friend move furniture;" and he "help[ed] another friend at a swap meet." (*Id.*, citing Exh. B1F and B3F)

Specifically, Plaintiff told a physician that he helped people on weekends to "get some money" and he did "mechanical work… or other maintenance work as needed" for friends. (Doc. 9-8 at 2, 8) In addition, he stated that in September 2015 he recently spent time "working at [a] Swap Meet with a friend," but "was unable to go to work at the Swap Meet because of … severe bone pains, back pain, and leg pains." (*Id.* at 66)  Thus, it appears the activities identified by the ALJ were limited and did not occur on a sustained basis.  Indeed, there is no evidence in the record that Plaintiff continued to help friends with mechanical work or at the swap meet after September 2015—approximately a year before his evaluation with Dr. Kurpiers.  Further, the ALJ fails to explain how Plaintiff's ability to occasionally work with friends is inconsistent with the findings related to Plaintiff's ability to get along with others—outside of his circle of friends— on a *daily* basis. Because the ALJ did not explain how Plaintiff's limited activities were inconsistent with Dr. Kurpiers' findings, this factor does not support the ALJ's decision to reject the mental limitations identified.

> d.    *Inconsistency with the record*

The Ninth Circuit determined that inconsistency with the overall record constitutes a legitimate reason for discounting a physician's opinion. *Morgan*, 169 F.3d at 602-03.  To reject an opinion as inconsistent with the medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986).

The ALJ indicated "the opinions of other reviewing medical experts… [were] better supported

by the totality of the medical evidence of record," thus suggesting the opinion of Dr. Kurpiers conflicted those of other physicians and the record as a whole. (*See* Doc. 9-3 at 18) However, the ALJ failed to identify and discuss specific the conflicting opinions or other medical evidence. Rather, the ALJ offered only a conclusion that Dr. Kurpier's opinion was inconsistent with the record as a whole, which does not "achieve the level of specificity … required" by the Ninth Circuit. *See Embrey*, 849 F.2d at 421-22; *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (noting courts will not "comb the administrative record to find specific conflicts"). Thus, this factor does not support the ALJ's decision to reject the limitations identified by Dr. Kurpiers.

**B.   Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

Tthe ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Dr. Kurpiers. The failure to identify specific and legitimate reasons, supported by substantial evidence, for rejecting the opinion was not "inconsequential to the ultimate nondisability determination." *See Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012) Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's mental residual functional capacity. *See Moisa*, 367 F.3d at 886.

*///*

14

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence, and the decision cannot be upheld by the Court. *See Sanchez*, 812 F.2d at 510.

Based upon the foregoing, the Court **ORDERS**:

1.   The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.   The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Joel Reynoso and against Defendant, Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 2, 2020**                       _____ **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE

15